UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
------------------------------------------------------------------
EUGENE SCALIA, Secretary of Labor,              :
United States Department of Labor,              :  **COMPLAINT**
                                                :
                        Plaintiff,              :  Civil Action No. 19-cv-2144
            v.                                  :
                                                :
ALPHA TELEKOM LLC, and                          :
ANGEL GONZALEZ, Individually,                   :
                                                :
                        Defendants.             :
                                                :
------------------------------------------------------------------

1.   Plaintiff, EUGENE SCALIA, Secretary of Labor, United States Department of Labor (the "Secretary"), by and through undersigned counsel, brings this action pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) ("the Act" or "the FLSA"), alleging that Defendants violated Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act, to recover back wages and liquidated damages; to enjoin acts and practices that violate the provisions of the FLSA; and to obtain other appropriate relief.

2.   The Secretary brings this action seeking, inter alia, back wages and liquidated damages for 185 workers employed by Defendants repairing telephone infrastructure in Puerto Rico following Hurricane Maria.

3.   From December 2017 through at least July 2018, Defendants' employees regularly worked upwards of eighty hours per week in an unflagging endeavor to rebuild the island's telecommunications network as quickly as possible. However, in flagrant violation of the Act, Defendants deprived their employees of their rightfully owed wages by not paying any overtime premiums and not paying employees at all for certain hours worked. Egregiously, Defendants also

1

did not pay some employees for some entire weeks of work. In furtherance of their violations of the Act, Defendants failed to keep complete and accurate records of employees' hours and pay.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, and 28 U.S.C. §§ 1331 and 1345.

5. Venue of this action lies in the United States District Court for the District of Puerto Rico because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### THE PARTIES

*Plaintiff*

6. Plaintiff, EUGENE SCALIA, Secretary of Labor, United States Department of Labor, is vested with authority to file suit to restrain violations of the FLSA and recover back wages and liquidated damages, and is the proper plaintiff for this action.

*The Company Defendant*

7. Defendant ALPHA TELEKOM LLC ("Alpha") is a company organized under the laws of the State of Texas, having its principal office at 1333 Shore District Drive, #1322, Austin, Texas 78741.

8. Shortly after the devastation caused by Hurricane Maria, Defendant ALPHA entered into contracts committing to repair telecommunications infrastructure in Puerto Rico.

9. In December 2017, Defendant ALPHA obtained a Certificate of Authorization from the Department of State of Puerto Rico to do business in Puerto Rico, for a "perpetual" term. The Certificate listed ALPHA as having an office in San Juan.

10. Defendant ALPHA, at all relevant times, has regulated the employment of all persons employed by it, acted directly and indirectly in the company's interest in relation to the employees, and thus is an employer of employees within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

*Individual Defendant*

11. Defendant ANGEL GONZALEZ, an individual, is the sole owner of Alpha.

12. Defendant ANGEL GONZALEZ is the President, organizer, and sole officer of Alpha.

13. Upon information and belief, Defendant ANGEL GONZALEZ resides in Dorado, Puerto Rico.

14. During the relevant time period, Defendant ANGEL GONZALEZ personally participated in the day-to-day operations of Alpha.

15. In approximately October 2017, Defendant ANGEL GONZALEZ signed the contracts that Defendant ALPHA entered into for telecommunications repair services in Puerto Rico following Hurricane Maria.

16. Defendant ANGEL GONZALEZ recruited former Alpha employees (who had worked for Alpha elsewhere in the United States) to travel to Puerto Rico to work for Defendants on the post-Hurricane Maria repairs.

17. Defendant ANGEL GONZALEZ also interviewed new Alpha applicants in Puerto Rico, and hired them.

18. Defendant ANGEL GONZALEZ told Alpha's employees what their rates of pay and work hours would be for work performed on post-Hurricane Maria repairs in Puerto Rico.

19. At all relevant times, Defendant ANGEL GONZALEZ had authority, and exercised his authority, to determine compensation for employees of Alpha.

20. Defendant ANGEL GONZALEZ decided to compensate employees of Alpha at an hourly rate that did not include a premium for hours worked over 40 in a week, in violation of Section 7 of the Act, 29 U.S.C. § 207.

21. At all relevant times, Defendant ANGEL GONZALEZ had authority to hire, and did hire, employees of Alpha.

22. Upon information and belief, Defendant ANGEL GONZALEZ had authority to fire employees of Alpha.

23. During the relevant time period, Defendant ANGEL GONZALEZ had authority to, and did, supervise employees of Alpha.

24. During the relevant time period, Defendant ANGEL GONZALEZ regularly visited work locations and monitored the work of employees of Alpha.

25. During the relevant time period, Defendant ANGEL GONZALEZ regularly reviewed employee timesheets and approved Alpha's payroll.

26. At times during the relevant period, Defendant ANGEL GONZALEZ's name was pre-printed on the top left portion of Alpha's employee paychecks.

27. During the relevant time period, Defendant ANGEL GONZALEZ signed all paychecks for Alpha employees.

28. Defendant ANGEL GONZALEZ has regulated the employment of all persons he has employed and has acted directly and indirectly in Alpha's interests in relation to the employees. Defendant ANGEL GONZALEZ is thus an employer of the Alpha employees within the meaning

of Section 3(d) of the Act, 29 U.S.C. § 203(d), and is a "person" within the meaning of Section 3(a) of the Act, 29 U.S.C. § 203(a).

## DEFENDANTS ARE AN ENTERPRISE ENGAGED IN COMMERCE WITHIN THE MEANING OF THE ACT

29. Alpha is an enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r).

30. Alpha's business activities, as described herein, are related and performed through common control for a common business purpose and constitute an enterprise within the meaning of Section 3(r) of the Act.

31. As described herein, Alpha engaged in the business of repair of telecommunications infrastructure damaged by natural disasters.

32. At all times relevant to this Complaint, Alpha had an annual gross volume of sales made or business done in an amount not less than $500,000.

33. Alpha has employed the employees listed in Exhibit A in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including repairing telephone lines, which are instrumentalities of commerce.

34. Additionally, the employees listed in Exhibit A participated in the handling or otherwise working on goods or materials that have been moved in or produced for commerce. These goods include but are not limited to materials used in telecommunications repairs, such as coaxial cables, optic fiber, screws, nuts and bolts, and light poles; and for other employees, computers and office supplies.

35. Therefore, Defendants' employees have been employed in an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1)(A) of the Act, 29 U.S.C. § 203(s)(1)(A).

36. Together, Defendants are an employer of Defendants' employees within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

### THE AFFECTED INDIVIDUALS WERE EMPLOYEES OF DEFENDANTS

37. Defendants employed two types of employees, field employees and office employees.

38. Among other tasks, field employees performed construction and repair work on telecommunications infrastructure damaged by Hurricane Maria. Field employees' primary responsibility was to manually install fiber optic cable, for instance by pulling such cable from reels mounted on trucks.

39. Among other tasks, office employees typically handled invoices and billing, reviewed Alpha's employee payroll, and performed clerical work.

40. Defendants misrepresented to their field and office employees in Puerto Rico that they were "independent contractors" of Defendants. However, as alleged throughout this Complaint, the 185 or more individuals who performed work for Defendants in the field and Defendants' office were, in fact, Defendants' employees.

41. As alleged herein, Defendants recruited, interviewed, and hired their employees, and had the power to fire them.

42. At all relevant times, Defendants exercised control over their employees' work. Specifically, Defendants (through Defendant Gonzalez and Defendants' supervisory employees) told their field and office employees at which locations they were required to work and set their schedules and pay rates.

43. At all relevant times, Defendants required their field and office employees to fill out weekly timesheets.

44. At all relevant times, employees did not provide the materials or tools used for the work they performed for Defendants.

45. Upon information and belief, at all relevant times, Defendants' employees did not have any other jobs other than the work performed for Defendants.

46. Defendants' employees had no opportunity for profit or loss, but were paid by the hour by Defendants.

47. The individuals employed by Defendants were employees within the meaning of Section 3(e) of the Act, 29 U.S.C. § 203(e).

### DEFENDANTS' PROHIBITED PAY PRACTICES

*Defendants Failed to Pay Premium Pay for Overtime Hours Worked*

<u>Field Employees</u>

48. During the relevant time period, field employees regularly worked approximately 60 to 90 hours per week.

49. Defendants paid field employees flat hourly rates, typically ranging from about $15 to $40 for each hour worked.

50. Defendants did not pay their field employees the required premium of one and one-half times their regular rate of pay for any hours worked in excess of 40 in a workweek.

51. Defendants used typewritten timesheet templates that employees filled in by hand to track most hours worked by field employees.

52. Defendants handwrote an hourly rate on some employee timesheets.

53. The hourly rates of pay for each such field employee did not change from week to week, regardless of the number of overtime hours these employees worked each week.

54.     For example, according to Defendants' time records, a field employee worked 77 hours over 7 days for the one-week pay period ending February 17, 2018 and was paid $25 per hour for all hours, a rate indicated on the employee's timesheet for that week.

55.     Where an hourly rate was not indicated on field employees' timesheets, it is apparent, as shown by simple math, that Defendants paid such employees at a flat hourly rate, with no overtime premium.

56.     For example, according to Defendants' time and pay records, a field employee worked 69 hours over 6 days for the one-week pay period ending March 10, 2018 and was paid a total of $933.05, i.e., $13.52 per hour. The same employee worked 72 hours over 6 days for the following one-week pay period ending March 17, 2018 and was paid a total of $973.62. Dividing the total paid by the hours worked for each week, the $13.52 hourly rate remained the same for each week, indicating that Defendants did not pay any overtime premium in either week.

57.     Additionally, Defendants regularly failed to pay field employees for all the hours they actually worked.

58.     For example, in overtime workweeks, employees regularly worked more than 12 daily hours, but Defendants' practice was not to pay employees anything after the first 12 hours worked in a given day.

59.     The Defendants engaged in the practices described in the preceding paragraphs 48 through 58 from at least December 2017 through at least July 2018.

Office Employees

60.     During the relevant time period, office employees regularly worked approximately 45 to 80 hours per week.

61. Defendants paid office employees flat hourly rates, typically ranging from approximately $15 to $25 for each hour worked each day.

62. Defendants did not pay their office employees the required premium of one and one-half times their regular rate of pay for hours worked in excess of 40 in a workweek.

63. Defendants used typewritten timesheet templates that employees filled in to track most hours worked by office employees.

64. Defendants handwrote an hourly rate on some office employee timesheets.

65. The hourly rates of pay for each such office employee did not change from week to week, regardless of the number of overtime hours these employees worked each week.

66. For example, according to Defendants' time records, an office employee worked 63 hours over 6 days for the one-week pay period ending February 17, 2018 and was paid $25 per hour for all hours, a rate indicated on the employee's timesheet for that week.

67. As another example, according to Defendants' time records, an office employee worked 86.16 hours over 7 days for the one-week pay period ending February 17, 2018 and was paid $25 per hour for all hours, a rate indicated on the employee's timesheet for that week.

68. Defendants engaged in the practices described in the preceding paragraphs 60 through 67 from at least April 2018 through at least August 2018.

*Defendants Failed to Pay Minimum Wage for Some Hours Worked*

69. Defendants failed to pay some field employees any wages for some weeks, resulting in minimum wage violations for those weeks.

70. For example, Defendants failed to pay certain field employees any amount for certain weeks of work, sometimes by withholding the first two weeks of employees' checks, and sometimes by not issuing any checks for the last weeks of employment.

71. In some weeks for which Defendants did not pay employees, those employees worked over 40 hours per week, resulting in both minimum wage and overtime violations for those weeks.

72. The Defendants engaged in the practices described in the preceding paragraphs 69 through 71 from at least December 2017 through at least July 2018.

### DEFENDANTS FAILED TO MAKE AND MAINTAIN ACCURATE RECORDS

73. From at least December 2017 through at least July 2018, Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the regulations at 29 C.F.R. Part 516.

74. Defendants failed to preserve many timesheets from the relevant time period, including any timesheets whatsoever for some employees.

75. During the relevant time period, Defendants did not maintain accurate records of some employees' hours worked.

76. During the relevant time period, Defendants did not maintain any record that included employees' home addresses.

77. During the relevant time period, Defendants did not maintain regular records showing the hourly rate used in computing wages for many employees.

78. During the relevant time period, Defendants did not make or maintain regular records for each employee showing total straight-time earnings for non-overtime hours worked.

79. During the relevant time period, Defendants did not make or maintain any record showing total premium pay for overtime hours worked for any employee.

80. During the relevant time period, Defendants did not make or maintain any record showing deductions made from wages for any employee.

81. During the relevant time period, Defendants did not preserve any record showing total wages paid for most pay periods to most employees.

82. Defendants engaged in the practices described in the preceding paragraphs 73 through 81 from at least December 2017 through at least July 2018.

### TOLLING AGREEMENT

83. On or about May 9, 2019, Defendants and the Secretary knowingly and voluntarily entered into a Statute of Limitations Tolling Agreement ("Tolling Agreement").

84. The Tolling Agreement states that any legal proceeding brought by the Secretary or affected employees shall be deemed to have been filed on December 31, 2018.

85. Accordingly, this complaint shall be deemed to have been filed on December 31, 2018.

### FIRST CAUSE OF ACTION
### Violation of Sections 7(a) and 15(a)(2) of the FLSA
### Failure to Pay Overtime

86. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 85 of the complaint.

87. Defendants have violated the provisions of Sections 7 and 15(a)(2) of the Act by employing employees in an enterprise engaged in commerce or in the production of goods for commerce for workweeks longer than forty hours without compensating the employees for their employment in excess of forty hours at rates not less than one and one-half times the regular rates at which they were employed, as required by Section 7 of the Act.

88. As set forth in paragraphs 1 through 68 above, at all times relevant to this Complaint, Defendants' employees regularly worked in excess of forty hours during any given workweek.

89. As set forth in paragraphs 1 through 68 above, at all times relevant to this Complaint, Defendant paid their employees according to a simple hourly rate without any overtime premium.

90. Therefore, Defendants are liable for unpaid overtime compensation and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid overtime compensation and prejudgment interest under Section 17 of the Act.

## SECOND CAUSE OF ACTION
### Violation of Sections 6(a) and 15(a)(2) of the FLSA
### Failure to Pay Minimum Wage

91. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 85 of the complaint.

92. As a result of Defendants' failure to pay employees for any hours worked in some weeks, Defendants have violated the provisions of Sections 6 and 15(a)(2) of the Act. Through their unlawful practices, Defendants paid employees in an enterprise engaged in commerce or in the production of goods for commerce at a rate less than the applicable statutory minimum wage prescribed in Section 6 of the Act.

93. Therefore, Defendants are liable for any unpaid minimum wages and an equal amount in liquidated damages under Section 16(c) of the Act or, in the event liquidated damages are not awarded, unpaid minimum wages and prejudgment interest under Section 17 of the Act.

## THIRD CAUSE OF ACTION
### Violation of Sections 11(c) and 15(a)(5) of the FLSA
### Failure to Make, Keep, and Preserve Adequate and Accurate Records

94. The Secretary incorporates by reference and re-alleges the allegations in paragraphs 1 to 85 of the complaint.

95.     Defendants have violated the provisions of Sections 11(c) and 15(a)(5) of the Act, in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions of employment as prescribed by the Regulations at 29 C.F.R. Part 516.  More specifically, as set forth in paragraphs 1 through 85 above, Defendants failed to make and maintain adequate and accurate records of all employees' home addresses, regular hourly rate of pay, total straight-time earnings for non-overtime hours worked, total premium pay for overtime hours worked, total deductions from wages, and total wages paid.

**WHEREFORE**, cause having been shown, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1. An injunction issued pursuant to Section 17 of the Act permanently restraining Defendants, their officers, agents, servants, employees, and those persons in active concern or participation with Defendants, from violating the provisions of Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act;

2. An order pursuant to Section 16(c) of the Act finding Defendants liable for unpaid overtime and minimum wage compensation found due Defendants' employees listed on the attached Exhibit A and an equal amount of liquidated damages (additional back wage compensation and liquidated damages may be owed to certain employees presently unknown to Plaintiff for the period covered by this Complaint); or

3. In the event liquidated damages are not awarded, for an injunction issued pursuant to Section 17 of the Act restraining Defendants, their officers, agents, employees, and those persons in active concert or participation with Defendants, from withholding the amount

of unpaid overtime and minimum wage compensation found due Defendants' employees, and prejudgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

4. An order compelling Defendants to reimburse the Secretary for the costs of this action; and

5. An order granting such other relief as the Court may deem necessary or appropriate.

DATED:   December 19, 2019
         New York, New York

                        KATE S. O'SCANNLAIN
                        Solicitor of Labor

                        JEFFREY S. ROGOFF
                        Regional Solicitor

BY:   /s/ Jason E. Glick
      JASON E. GLICK
      Trial Attorney
      Bar No. G02813

      U.S. Department of Labor,
      *Attorneys for Plaintiff Secretary of Labor*

      U.S. Department of Labor
      Office of the Regional Solicitor
      201 Varick Street, Room 983
      New York, NY 10014
      (646) 264-3687
      (646) 264-3660 (fax)
      Glick.jason.e@dol.gov
      NY-SOL-ECF@dol.gov

**EXHIBIT A**

Aaron Worthington
Adriana Vazquez
Alex Muniz
Alexander Rivera Lopez
Alexander Rosa
Amber Garrett
Andre Castillo
Andres Campos
Angel A. Ortiz Perez
Angel M. Benoit Sosa
Anthony Vargas
Ariel Alsina
Arnaldo Vazquez Pacheco
Arthur Williams
Brandon Braxton
Brian Cruz Rivera
Camille Colon
Carlos A. Rodriguez
Carlos A. Suarez
Carlos Habash
Carlos J. Kuidlan Vega
Carlos Lugo Santos
Carlos Martinez Otero
Carlos Rodriguez Rodriguez
Carlos Santiago Acosta
Carlos Santiago Rivera
Carlos Santiago Torres
Cesar Martin Capon
Christian Domena
Cynthia Miller
Daniel Beeber
Daniel Rodriguez
Dave Stephen
David Cardbine
David Coulter
David Perminter
David Sepulveda
Dennis Mitchell
Diego Carretero

Donna Peeno
Edgar D. Casanova Aponte
Edgar Quinones Lopez
Edson Carretero
Eduardo Arizmendi
Edwin Natal Quinones
Efrain Gonzalez
Eliezer Andino Rosa
Elisaul Rivera Lopez
Elvin Aviul Alsina Hernandez
Esteban Rios Santana
Felix Ramos
Fernando L. Castillo Burgos
Fernando Quiles
Francisco Colon
Francisco Ruiz
Frank Fleckenstein
Gabriel Rivera
Gabriel Rodriguez
Gilberto Ramos
Gustavo Albaladejo Ferrer
Hammas El Astal Lopez
Hani Abushaeena
Harold M. Mendez
Harold Mitchell
Hector A. Rivera Rivera
Hector Cintron
Hector Figueroa
Hector Scamaroni Martinez
Heiner Carretero
Hiram Burgos Rodriguez
Humberto Raul Lopez
Irvin Angel Maldonado
Ismael Santiago
Israel Ortiz Jusino
Jaileen Ramos Rivera
Jaime Moux
Jaime Soto
Jaison Cardona
James Barajas

James Hopkins
Jan Ruberte
Jason Geiger
Javier Parrilla
Jean Carlos Colon Sanchez
Jeffrey Quinones Nunez
Jerani Pacheco Lopez
Jesus Ibarrondo
Joel Casablanca Ayala
Jorge G. Mercado Melendez
Jose A. Hernandez Santos
Jose A. Torres Morales
Jose Vargas
Jose Aponte
Jose Aragon
Jose Saez
Jose C. Garcia Figueroa
Jose L. Caballero Lopez
Jose Diaz
Jose Ivan Ojeda
Jose Irizarry
Jose Quinones Nunez
Jose L. Serrano Sanchez
Joseph Rivera Hernandez
Josue Figueroa Ortiz
Josue Rios
Jovan A. Mendez
Juan A. Rey
Juan C. Diaz
Juan G. Caballero Lopez
Juan Carlos Vega Morales
Juan J. Garcia Rivera
Juan P. Melendez Adorno
Julio O. Rodriguez
Karl Kilgore
Keeran K. Singh
Kelvin Santiago
Kelvin Serrano Reyes
Kevin J. Ortega Villanueva
Kevin Rivas

Kyle Snyder
Larry D. Weike
Lavalle Montoya
Lawrence Kline
Lazaro Carbajal
Luis A. Figueroa Perez
Luis A. Rosario
Luis Manuel Ibanez
Luis Remon
Luis Rosado
Manuel O. De Jesus Ferrer
Mario Perez
Michael A. Hernandez
Michael J. Mata
Miguel A. Maldonado
Miguel A. Rodriguez
Milton Garcia
Moises Vargas
Natanael Santos Martinez
Neftali Pena
Nelson Bosques
Neftali Rodriguez
Orlando Cardona
Orlando Gonzalez
Osami Gonzalez Lopez
Oscar Caraballo
Osvaldo Martinez Gonzalez
Ovidio Martinez
Pedro R. Beltran Rivera
Rafael Febles
Ramon Santiago
Raul Delgado
Raymond J. Rey
Raymond Montanez
Rigoberto Ramos Perez
Robert Barajas
Roberto C. Maldonado Santiago
Roberto Farinas
Rodger Wooten
Roman Arzan Delgado

Roman Herrera
Samuel Carlisle
Samuel Daria Lugo Irizarry
Santos Velazquez
Sara Katz
Sebastian Sanchez Rodriguez
Siul Negron Martinez
Steven Morales Maisonet
Terry Miller
Thomas Bickham
Travis Mitchell
Tyler Coats
Valerie Banegas
Victor Manuel Rivera
Victor Caguitas
Victor Caraballo
Victor Carretero
Victor Maisonet Quintana
Virgilio Quiles
Wesley Gonzalez
Wilfredo Figueroas Colon
Wilfredo Figueroas Torres
Wilfredo Rivera Lopez
William Guillete
Yahaira A. Perez Rosado
Yariel Parrilla